IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**LPS DEFAULT SOLUTIONS, INC.** \*

    **v.**      \*      **CIVIL NO. WDQ-13-0794**

**FRIEDMAN & MACFADYEN, P.A.** \*

## REPORT AND RECOMMENDATION

This matter comes before the Court upon motion by LPS Default Solutions, Inc.("LPS" or "plaintiff") for an entry of default judgment against Friedman & MacFadyen, P.A. ("Friedman" or "defendant"), pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, for failure to appear or otherwise defend in this matter. On March 14, 2013, plaintiff filed a complaint alleging that defendant owed sums certain to plaintiff under accounts stated (Counts One and Three) and breached their contracts with plaintiff (Counts Two and Four), by failing to pay amounts due under four separate contracts. (ECF No. 1, 4-5). For the reasons discussed herein, I recommend that plaintiff's motion (ECF No. 10) be GRANTED and that damages be awarded as set forth herein.

### Background

On or about February 3, 2004, Friedman and LPS executed two service agreements ("DC Services Agreement" and "Virginia Services Agreement") under which LPS (which was known at the time as Fidelity National Foreclosure Solutions, Inc.) would

1

provide "certain administrative services" to Friedman in connection with Friedman's legal work in the District of Columbia and Virginia. (ECF No. 1, ¶ 7). On or about the following day, the parties entered into a similar agreement ("Maryland Services Agreement," collectively the "Services Agreements" with the prior agreements). Id. at ¶ 8. On or about August 22, 2005, the same parties entered into a fourth agreement for payment of license fees for Friedman's use of certain computer software (the "NewTrak Agreement"). Id. at ¶ 13.

LPS invoiced Friedman for the amounts due under all four contracts for the services rendered, and Friedman did not object to the invoices nor the statements also sent by LPS. Id. According to the complaint filed by LPS, Friedman owes a total of $48,077.50 under the Service Agreements and $501,630.00 under the NewTrak agreement. Id. at 2-3.

**Default Judgment Standard**

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. In deciding whether to grant a motion for default judgment, the Court must first consider the following three factors: (1) whether the plaintiff will be prejudiced if default is not granted, (2)

whether the defendant has a meritorious defense, and (3) whether the defendant's delay was the result of culpable misconduct. Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3rd Cir. 1987), see also Smith v. Bounds, 813 F.2d 1299 (4th Cir. 1987)(relying on these factors in determining whether a default judgment merited reconsideration).

The Court must also determine whether plaintiff has alleged legitimate causes of action. In reviewing plaintiff's Motion for Entry of Money Judgment by Default, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780-81 (4th Cir. 2001). It, however, remains for the Court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. Id., see also 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2688 (3rd ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the Court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the Court determines that liability is established, it must then determine the appropriate amount of damages. Ryan, 253 F.3d at 780-81. Unlike allegations of fact establishing liability, the Court does not accept factual allegations regarding damages as true, but rather must make an independent

determination regarding such allegations. See Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 154 (2nd Cir. 1999). In so doing, the Court may conduct an evidentiary hearing. FED. R. CIV. P. 55(b)(2). The Court may also make a determination of damages without a hearing as long as there is an adequate evidentiary basis in the record for the award. See, e.g., Stephenson v. El-Batrawi, 524 F.3d 907, 917 n.11 (8th Cir. 2008) ("Foregoing an evidentiary hearing may constitute an abuse of discretion when the existing record is insufficient to make the necessary findings in support of a default judgment."); Adkins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (finding that a court need not make determination of damages following entry of default through hearing, but rather may rely on detailed affidavits or documentary evidence to determine the appropriate sum).

**Preliminary Factors**

The Clerk of Court having filed entry of default on April 30, 2013 (ECF No. 9), the undersigned concludes that the procedural requirements for entry of default judgment have been met. Moreover, because defendant has failed to file any responsive pleadings or otherwise show cause as to why default should not be granted, the Court is "not in a position to judge whether any delay was the result of culpable misconduct." Sambrick, 834 F.2d at 73. Further, defendant's failure to appear

deprived plaintiff of any other means of vindicating their claim and plaintiff would be prejudiced if default is not granted.

**Discussion**

A. Services Agreements

LPS and Friedman entered into the three Services Agreements on or about February 3-4, 2004. (ECF No. 1, 2). The agreements provided that LPS would provide Friedman with non-legal administrative services related to mortgage foreclosures, bankruptcies, and other loan default services, in exchange for payment of their invoices within thirty days. (ECF No. 14-16, 4).

The agreements do not state which state law governs the agreements, nor do they address which venue should be used to resolve any legal disputes arising from them. Id. When a diversity case results in a choice of law question, "a federal court must apply the choice of law rules of the state in which it sits to determine which state's substantive law applies[.]" 17A JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE – CIVIL § 124.30 (3d ed.)(citing Griffin v. McCoach, 313 U.S. 498, 503 (1941)). Accordingly, this Court must turn to the Maryland choice of law rules. In Maryland, "a contractual claim … is governed by the law of the place where the contract is made, which is the place where the last act required to make a contract binding occurs." Schwartz v. Rent A Wreck of Am., Inc., 468 Fed. Appx. 238, 256

5

(4th Cir. 2012)(quoting Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Techn. Fin. Gr., Inc., 299 F. Supp. 2d 505, 518 n.13 (D. Md. 2004)). Additionally, "Maryland has not adopted the 'most significant relationship' test stated in § 188 of the Restatement (Second) but has maintained its allegiance to the lex loci contractus principle." Baker's Express, LLC v. Arrowpoint Capital Corp., 2012 U.S. Dist. LEXIS 135418, at *28-30 (D. Md. 2012)(quoting Jackson v. Pasadena Receivables, Inc., 398 Md. 611, 619 n.3 (2007)).

There is insufficient information in the complaint to determine where the "last act" to make the contract binding occurred. However, it is reasonable to assume the contract between LPS and Friedman would be governed by either Maryland law (Friedman's principal place of business) or Minnesota (LPS's principal place of business). (ECF No. 1, 1-2). The law governing simple breach of contract and account stated claims is equivalent in both states, so the complaint can be evaluated for adequate causes of action without finding which state's laws are binding.

i. Account Stated

In Count One of their complaint, LPS alleges a cause of action against Friedman for account stated in relation to the three Services Agreements. (ECF No. 1, 4). In Maryland,

> in order to maintain a cause of action on an

> account stated, all that need be shown is an admission that the stated sum of money constitutes a present existing debt. Such admission need not be express, but may be inferred. Thus, under appropriate circumstances, a failure within a reasonable time to object to the correctness of a stated sum may be regarded as an admission of liability.

<u>Baltimore County v. Archway Motors, Inc.</u>, 35 Md. App. 158, 166 (Ct. Spec. App. 1977)(citing Lyell v. Walbach, 111 Md. 610, 614-15 (1909)).

The Minnesota Supreme Court has defined account stated similarly, stating "an account stated is an agreement, express or implied, between persons having business relations, that a statement of account between them is correct." <u>See</u>, e.g. <u>Lentz v. Pearson</u>, 246 Minn. 145, 151 (1956)(citing 1 Dunnell Dig. (3 ed.) § 50). Minnesota similarly acknowledges that an "acquiescence in the existing condition liability between the parties" may be proven by "retention of a statement of account without objection for more than a reasonable length of time[.]" <u>Bureau of Credit Control, Inc. v. Luzaich</u>, 282 Minn. 530, 532-533 (Minn. 1968).

Here, LPS claims Friedman owed $48,077.50 under the Services Agreements and failed to respond to "numerous" invoices and statements illustrating the balance due, resulting in an implicit promise to pay. (ECF No. 1, 3-4). Accepting these well-pled factual allegations as true, a cause of action for account

stated against Friedman exists.

 ii. <u>Breach of Contract</u>

In Count Two of the complaint, LPS alleges Friedman breached their contract with LPS by failing to pay invoices for the services provided by LPS. Under Maryland law, the elements of a breach of contract are (1) a contractual obligation and (2) a material breach of that obligation. <u>Taylor v. NationsBank, N.A.</u>, 365 Md. 166, 175 (Md. 2001); <u>Capitol Radiology, LLC v. Bank</u>, 439 Fed. Appx. 222 (4th Cir. 2011)(citing <u>id.</u>).

Under Minnesota law, the elements of a breach of contract are similar: "the plaintiff must show (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." <u>Park Nicollet Clinic v. Hamann</u>, 808 N.W.2d 828, 833 (Minn. 2011).

Here, plaintiff has provided the Court with a signed copy of each agreement indicating contractual obligations were formed, meeting the first element of both Maryland and Minnesota law. (ECF No. 14-16). Plaintiff asserts that defendant breached these contracts when they failed to pay the invoices listed in Exhibit E submitted with the plaintiff's supplemental documents response. (ECF No. 1, ¶ 22; ECF No. 18). The invoices indicate LPS performed the condition precedent (performance of administrative services) to their demand of performance (request

for payment), meeting the second element of Minnesota law.

Finally, the agreements are unambiguous and provide that Friedman would pay LPS within thirty days of each invoice for LPS's services rendered. Id. Failure to pay the invoices was a material breach of the agreements, meeting the final element of both Maryland and Minnesota law. These unchallenged assertions of fact constitute a legitimate cause of action for breach of contract against Friedman.

B. NewTrak Agreement

LPS and Friedman entered into a fourth contract, the NewTrak Agreement, on or about August 22, 2005. (ECF No. 1, 3). The Agreement provided that LPS would provide Friedman with access to utilize a computer software application (NewTrak) designed and owned by LPS in exchange for license and usage fees. (ECF No. 17, 1). The agreement indicated that the "laws and judicial decisions of the state of Florida shall govern its validity, construction, interpretation, and legal effect[.]" (ECF No. 17, 6).

i. Account Stated

In Count Three of their complaint, LPS alleges a cause of action against Friedman for account stated in relation to the NewTrak Agreement. (ECF No. 1, 5). Florida law on account stated is similar to the Maryland and Minnesota law discussed in

Section A of this discussion: "for an account stated to exist as a matter of law, there must be an agreement between the parties that a certain balance is correct and due and an express or implicit promise to pay this balance." Merrill-Stevens Dry Dock Co. v. "cornice Express", 400 So. 2d 1286 (Fla. Dist. Ct. App. 3d Dist. 1981)(collecting cases).

Here, LPS claims Friedman owed $501,360.00 under the NewTrak Agreement and failed to respond to "numerous" invoices and statements illustrating the balance due, resulting in an implicit promise to pay. (ECF No. 1, ¶ 15). Accepting these well-pled factual allegations as true, a cause of action for account stated against Friedman exists.

  ii. Breach of Contract

In Count Four of the complaint, LPS alleges Friedman breached their contract with LPS by failing to pay invoices for the services provided by LPS under the NewTrak Agreement. Under Florida law,

> the elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach. "In addition, in order to maintain an action for breach of contract, a claimant must also prove performance of its obligations under the contract or a legal excuse for its nonperformance.

Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2d Dist. 2006)(citing Knowles v. C.I.T. Corp., 346 So. 2d

1042, 1043 (Fla. 1st DCA 1977); Old Republic Ins. Co. v. Von Onweller Constr. Co., 239 So. 2d 503, 505 (Fla. 2d DCA 1970); Marshall Constr., Ltd. v. Coastal Sheet Metal & Roofing, Inc., 569 So. 2d 845, 848 (Fla. 1st DCA 1990)).

Here, Plaintiff has provided the Court with a signed copy of the agreement between LPS and Friedman indicating the existence of a contract. (ECF No. 17). Plaintiff asserts that defendant breached this contract when defendant failed to pay the invoices listed in Exhibit F submitted with the plaintiff's supplemental documents response. (ECF No. 1, 5; ECF No. 19). The agreement is unambiguous and provided that Friedman would pay LPS within fifteen days of each invoice for LPS's services rendered. (ECF No. 17). Failure to pay the invoices was a material breach of the agreement, and resulted in damage to LPS in the amount of the invoices. These unchallenged assertions of fact constitute a legitimate cause of action for breach of contract against Friedman.

C. Damages

LPS alleges damages in the amount of the unpaid invoices under the Services Agreements and the NewTrak Agreement. (ECF No. 10, 1-2). LPS sent numerous invoices and statements to Friedman, but received no reply. (ECF No. 1). By the terms of the Agreements, defendant had an obligation to pay LPS for the

services rendered. (ECF No. 13-16). LPS has provided the Court with statements indicating the invoice dates and amounts due totaling $48,077.50 under the Services Agreements and $501,360.00 under the NewTrak Agreement. (ECF No. 18-19). The undersigned therefore recommends an award of damages in the amount of $549,437.50.

D. Attorney's Fees

LPS withdrew their request for attorney's fees in its response to the Court's request for supplemental information. (ECF No. 13, 2). Accordingly, the undersigned recommends no award for attorney's fees.

E. Prejudgment Interest

In a diversity case, prejudgment interest is a matter of state substantive law. See Hitachi Credit Am. Corp. v. Signet Bank, 166 F. 3d 614, 633 (4th Cir. 1999).

For the Services Agreements, we examine both Maryland and Minnesota law as previously discussed. Under Maryland law, prejudgment interest is:

> allowable as a matter of right when the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date. First Virginia Bank v. Settles, 322 Md. 555, 564,(Md. 1991), see also Buxton v. Buxton, 363 Md. 634, 656 (Md. 2001), Knowles v. Mutual Life Ins. Co., 788 F.2d 1038, 1041 (4th Cir.

12

Md. 1986).

The prevailing rate for prejudgment interest in Maryland is six percent. Md. Const. Art. III, § 57 ("The Legal Rate of Interest shall be Six per cent. per annum; unless otherwise provided by the General Assembly."); Buxton, 363 Md. at 656. In Minnesota, the prevailing rate is also six percent. Minn. Stat. § 334.01 (2013)("The interest for any legal indebtedness shall be at the rate of $6 upon $100 for a year, unless a different rate is contracted for in writing."). Accordingly, the rate of six percent will be used to calculate interest on the amounts due under the Services Agreements.

Under Florida law, "the amount of interest to be paid, absent a controlling contractual provision, is a matter of policy to be determined by the legislature." Argonaut Ins. Co. v. May Plumbing Co., 474 So. 2d 212, 215 (Fla. 1985). However, the NewTrak Agreement includes a contractual provision establishing an interest rate of twelve percent per annum for unpaid invoices. (ECF No. 17, 2). Accordingly, the rate of twelve percent will be used to calculate interest on the amounts due under the NewTrak Agreement.

Here, LPS was deprived of a definite sum when Friedman failed to pay $48,077.50 in invoices under the Services Agreements and $501,360.00 in invoices under the NewTrak Agreement. (ECF. No. 13-16). The undersigned therefore

recommends that LPS be awarded prejudgment interest at the rate of six percent for the invoices under the Services Agreements ($48,077.50) from March 14, 2013 to August 2, 2013,[1] for a total of $1,114.34, and at the rate of twelve percent for the invoices under the NewTrak Agreement ($501,360.00) from March 14, 2013 to August 2, 2013,[2] for a total of $23,241.13.

F. Post Judgment Interest

Federal law, not state law, governs the calculation of post-judgment interest in diversity cases. Hitchai Credit Am. Corp., 166 F.3d at 633. Federal law mandates an award of post-judgment interest, "calculated from the date of entry of the judgment" at a rate based on "the weekly average 1-year constant maturity treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C. § 1961 (1988). Accordingly, the undersigned recommends that plaintiff be awarded post-judgment interest at the rate set forth in 28 U.S.C. § 1961 (1988).

**Conclusion**

For the reasons set forth above, the undersigned recommends that:

---

[1] A daily interest rate of 0.016438% should be applied to the balance after August 2, 2013 through the date of final judgment if judgment is not entered on that date.
[2] A daily interest rate of 0.032876% should be applied to the balance after August 2, 2013 through the date of final judgment if judgment is not entered on that date.

1. The Court GRANT Plaintiff's Motion for Entry of Money Judgment by Default. (ECF No. 10).

2. The Court AWARD plaintiff $549,437.50 in damages, prejudgment interest of $24,355.47, and post-judgment interest on the entire amount.

Date: 8/2/2013                          /s/
                                        Susan K. Gauvey
                                        United States Magistrate Judge